## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

JUSTIN RAY SPARLIN,

        *Plaintiff*,

      v.

THOMAS J. TEMPLETON, ARTHUR J. PRECI, KAREN EDGCOMB, SUSAN J. DARIF, JUSTIN RICK, CORRECTIONAL HEALTHCARE COMPANIES, INC., STEPHEN A. CULLINAN, and LASALLE COUNTY,

        *Defendants.*

Case No.  1:11-cv-03875

Judge Matthew F. Kennelly

**JURY TRIAL DEMANDED**

### AMENDED COMPLAINT

Plaintiff Justin Ray Sparlin ("Plaintiff"), by his court-appointed attorneys, for his Amended Complaint against Defendants Thomas Templeton, Arthur Preci, Karen Edgcomb, Susan Darif, Justin Rick, Correctional Healthcare Companies, Inc., Stephen Cullinan, and LaSalle County ("Defendants"), states as follows:

### INTRODUCTION

1.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 29 U.S.C. § 794a, and 42 U.S.C. § 12133 for compensatory damages, punitive damages, and declaratory relief, because Defendants deprived Plaintiff of his constitutional rights and unlawfully discriminated against him on the basis of his mental disability.

2.    As explained in more detail below, Defendants deprived Plaintiff of a protected liberty interest by (1) placing him into solitary confinement for more than 15 months notwithstanding his status as a pretrial detainee; (2) deliberately disregarding his serious medical needs during this confinement; (3) refusing to follow certain state-mandated procedures designed to avoid these types of constitutional injuries; and (4) sanctioning the policies that facilitated

these injuries, all in violation of Plaintiff's rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

3.      Defendants also discriminated against Plaintiff in violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-65, by denying him the benefits of health care services provided to non-mentally disabled detainees at LaSalle County Jail.

4.      Defendants' actions, which were extreme and outrageous, intended to cause, or recklessly or consciously disregarded the probability of causing, Plaintiff to suffer physical pain, discomfort, and severe emotional distress in violation of Illinois law.

## PARTIES

5.      Plaintiff is a United States citizen and a veteran of the United States Army. Plaintiff has been a resident and citizen of Illinois at all times relevant to this Amended Complaint.  Plaintiff is currently incarcerated at the Western Illinois Correctional Center in Mount Sterling, Illinois.

6.      Defendant Thomas J. Templeton is the Sheriff of LaSalle County, Illinois.  At all times relevant to this Amended Complaint, Defendant Templeton held this position and, upon information and belief, served as the Chief Jailer and administrator at LaSalle County Jail.

7.      Defendant Arthur J. Preci is employed by the LaSalle County Sheriff's Office as the Jail Superintendent at LaSalle County Jail.  Upon information and belief, Defendant Preci was employed in this same position at all times relevant to this Amended Complaint.

8.      Defendant Karen Edgcomb is employed by the LaSalle County Sheriff's Office as a Corporal.  Upon information and belief, at all times relevant to this Amended Complaint,

Defendant Edgcomb was employed in this same position and also served as a senior supervisor at LaSalle County Jail.

9.     Defendant Susan J. Darif is employed by the LaSalle County Sheriff's Office as a Corporal.  Upon information and belief, at all times relevant to this Amended Complaint, Defendant Darif was employed in this same position and also served as a supervisor at LaSalle County Jail.

10.     Defendant Justin Rick is employed by the LaSalle County Sheriff's Office as a Deputy.  Upon information and belief, at all times relevant to this Amended Complaint, Defendant Rick was employed in this same position and also served as a corrections officer at LaSalle County Jail.

11.     Defendant Correctional Healthcare Companies, Inc. ("CHC") is a Delaware corporation with its principal place of in Greenwood Village, Colorado and, upon information and belief, now owns and controls Health Professionals, Ltd. ("HPL"), based in Peoria, Illinois. Since the time of the conduct at issue in this Amended Complaint, HPL was consolidated into CHC and is now operated as an unincorporated division of CHC.  At all times relevant to this Amended Complaint, HPL acted under color of state law pursuant to its contract with LaSalle County to furnish medical care and physician services to inmates and pretrial detainees housed at the LaSalle County Jail.  (For purposes of this Amended Complaint, the term "HPL" will be used to refer to both HPL and its parent entity, CHC.)

12.     Defendant Stephen A. Cullinan is a physician licensed to practice medicine in the State of Illinois who, upon information and belief, was employed by HPL as a Regional Medical Director at all times relevant to this Amended Complaint.  Upon information and belief, at HPL's direction and pursuant to HPL's contract with LaSalle County Jail, Defendant Cullinan

served as the Medical Director and the sole staff physician for LaSalle County Jail during this same time period. All of Defendant Cullinan's conduct set forth in this Amended Complaint was within the scope of his employment with HPL, and was under color of state law by virtue of HPL's contract with LaSalle County.

13.     Defendant LaSalle County is a County in Illinois. LaSalle County operates the LaSalle County Jail and contracted with HPL to furnish medical care for inmates and pretrial detainees at the LaSalle County Jail.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to (i) 28 U.S.C. § 1331 because this is a civil action arising under the Fourteenth Amendment to the United States Constitution and under three federal statutes (42 U.S.C. § 1983, 29 U.S.C. § 794a, and 42 U.S.C. § 12133); and (ii) 28 U.S.C. § 1343 because Plaintiff seeks damages and other relief under the Civil Rights Act of 1871 and under the ADA.

15.     Additionally, Plaintiff brings state law claims. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367.

16.     Venue is proper in this judicial district because all of the events giving rise to Plaintiff's claims took place at LaSalle County Jail, which is located in LaSalle County within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

**A.**     **Defendants Failed to Follow Proper Procedures in Admitting Plaintiff to LaSalle County Jail.**

17.     On or about March 29, 2008, Plaintiff was booked as a pretrial detainee at LaSalle County Jail after being arrested and charged with a felony sex offense.

18.     Prior to his arrest, Plaintiff had agreed to be extradited from Germany, and did not contest his extradition or resist his arrest.

19.     Upon information and belief, correctional officers and administrators at LaSalle County Jail were aware of who Plaintiff was and the crime he was accused of committing when he arrived for admission to LaSalle County Jail.

20.     After his booking, Plaintiff was placed into an "isolation" cell.

21.     Plaintiff remained in isolation cells in solitary confinement at LaSalle County Jail for more than 15 months, until he was transferred to Stateville Correctional Center on or about July 2, 2009.

22.     At no time during his continuous 15 months in solitary confinement was there any valid reason – administrative or otherwise – for Defendants' decision to place Plaintiff in solitary confinement or to continue to house Plaintiff in solitary confinement for the duration of his incarceration at LaSalle County Jail.  At no time during those 15 months did Defendants ever tell Plaintiff why he was placed or kept in isolation.  Further, Defendants never provided Plaintiff with the opportunity to challenge the decision to have him remain in solitary confinement for the duration of his incarceration at LaSalle County Jail.

23.     None of the correctional officers handling his admission to LaSalle County Jail questioned him about his medical or mental health history, or about whether he was taking any prescription medications or having thoughts of suicide.

**B.     At the Time of His Criminal Offense, Plaintiff Was an Active Duty U.S. Army Soldier Suffering from Post-Traumatic Stress Disorder.**

24.     In 2005, Plaintiff enlisted in the Army.

25.     Upon information and belief, Plaintiff joined the infantry and was eventually designated as a mortar specialist.

26.     Plaintiff was deployed to Baghdad, Iraq for 15 months beginning in 2006.

27.     During his time in Iraq, Plaintiff was prescribed Xanax (drug name: Alprazolam), a medication used to treat symptoms of Post-Traumatic Stress Disorder ("PTSD").

28.     Plaintiff returned to the United States from Iraq in January 2008 for additional training at Fort Hood in Texas.

29.     Plaintiff was scheduled to be redeployed to Iraq 11 months later.

30.     The criminal offense for which Plaintiff was arrested occurred in February 2008.

**C.     Defendants Unconstitutionally Held Plaintiff in Extended Isolation at LaSalle County Jail.**

31.     Though Plaintiff was shuffled between several different isolation cells at LaSalle County Jail, he spent the vast majority of his 15-plus months of isolation in two particular cells, J-101 and I-102.

32.     Each of these cells measured approximately six feet by eight feet.

33.     Each had two "windows" – a one-foot square window in the door, and an opaque, frosted-glass window on the opposite wall.

34.     Both cells were illuminated by fluorescent lights 24 hours a day, seven days a week.

35.     Plaintiff was allowed out of his cells for only one hour each day, but was never allowed outdoors.

36.     Plaintiff was not permitted to have contact with other inmates.

37.     After several months in isolation, Plaintiff's mental and physical health began declining rapidly.

38.     It is well established that a person who is subjected to extended solitary confinement can suffer severe psychological harm from the solitary confinement. Specifically,

solitary confinement can exacerbate a previously existing mental condition, or cause the onset of a mental illness where none previously existed. Such mental illnesses may last well beyond the end of solitary confinement or become permanent. Moreover, solitary confinement for extended periods of time inevitably causes significant psychological pain during the period in which it is imposed.

39. Plaintiff suffered physical and psychological pain while he was in solitary confinement. The period of solitary confinement exacerbated mental and physical conditions which pre-dated his incarceration. Plaintiff's mental conditions significantly worsened and, upon information and relief, his physical brain functioning deteriorated as a result of the conditions and extent of his solitary confinement.

40. Plaintiff increasingly had trouble sleeping at night, and began suffering heightened symptoms of his mental illnesses.

41. Plaintiff also stopped spending the one "free" hour outside of his cell each day. Instead, he passed the time by crying in his cell.

42. When Plaintiff inquired about how he could get moved from his isolation cell to general population, he was told that he would not be moved.

43. Upon information and belief, Defendants Templeton and Preci had decided that Plaintiff should remain in his isolation cell. Upon information and belief, Defendant Templeton and/or Defendant Preci told the other correctional officers, including Defendants Edgcomb, Darif and Rick, that Plaintiff was to remain in his isolation cell. These Defendants then communicated this information to Plaintiff.

44. Defendants Templeton and Preci, as the final policymakers for the LaSalle County Jail, failed to develop policies and procedures to monitor and address the effects of

solitary confinement on pretrial detainees. The failure of Defendants Templeton and Preci to develop policies and procedures to monitor and address the effects of solitary confinement on pretrial detainees was the product of Defendants Templeton's and Preci's deliberate indifference to pretrial detainees' constitutional rights and the known damaging mental and physical effects on pretrial detainees and inmates that occur with extended lengths of solitary confinement. As a result of their failure to develop and implement appropriate policies, the jail staff deprived Plaintiff of his constitutional rights as protected by the Fourteenth Amendment.

**D.     Defendants Consistently Ignored and Denied Plaintiff's Medical Needs.**

45.     After his admission to LaSalle County Jail as a pretrial detainee, Plaintiff began complaining to correctional officers about his physical and mental health. In particular, Plaintiff told correctional officers that he needed medication to treat the symptoms of his depression and anxiety disorders. Upon information and belief, Defendants Edgcomb and Darif were two of the officers to whom Plaintiff communicated this information. Upon information and belief, Defendants Edgcomb and Darif did not communicate Plaintiff's complaints to any supervisors or to Defendant Cullinan.

46.     Plaintiff also told nurses at LaSalle County Jail and Defendant Cullinan about his mental health issues, and asked to receive appropriate mental health treatment.

47.     Upon information and belief, Defendant Cullinan refused to offer Plaintiff any mental health treatment at this time.

48.     Defendant also told nurses and Defendant Cullinan that he was suffering from acute pain in his chest and abdomen areas. Both types of pain are common physical symptoms of depression, anxiety and panic disorders.

49.     Upon information and belief, the nurses did nothing other than give Plaintiff small doses of Tylenol.

50.     On May 29, 2008, Plaintiff was examined by a psychiatrist, Dr. Robert E. Chapman, in connection with his criminal case.  Dr. Chapman diagnosed Plaintiff with Adult Attention Deficit Disorder and Dysthymic Disorder, a chronic form of depression that exists between major depressive episodes and can develop into a major depressive episode if not properly treated.  Dr. Chapman's diagnoses confirmed the existence of Plaintiff's mental illnesses.

51.     On Aug. 6, 2008, Plaintiff finally convinced Defendant Cullinan to request a copy of Plaintiff's mental health records.  The only record that Defendant Cullinan requested was a copy of Dr. Chapman's examination report.  The report, which Defendant Cullinan received the same day, revealed that – as Plaintiff had told Defendant Cullinan and, upon information and belief, Defendants Edgcomb and Darif – Plaintiff was suffering from depression and anxiety disorder, and his symptoms had been treated with various prescription medications.

52.     Plaintiff believed Defendant Cullinan would prescribe him the appropriate medication as soon as he read Dr. Chapman's report. Plaintiff did not know that Defendant Cullinan, upon information and belief, had no formal mental health training and lacked experience and training to adequately assess or treat Plaintiff's mental illnesses.

53.     Upon information and belief, Defendants Templeton and Preci knew that Defendant Cullinan had no formal mental health training and should have known that Defendant Cullinan was providing incompetent mental health care, but relied solely on Defendant Cullinan to conduct mental health examinations of detainees and prescribe necessary treatment. Defendants Templeton and Preci were aware that this decision to permit Defendant Cullinan to

provide substandard mental health care to pretrial detainees was deliberately indifferent to constitutional rights of pretrial detainees as protected by the Fourteenth Amendment. In spite of this knowledge, Defendants Templeton and Preci, as final policymakers for the LaSalle County Jail, deliberately chose to contract with HPL to provide mental health care to pretrial detainees.

54. Further, Defendants Templeton and Preci, as the final policymakers for the LaSalle County Jail, failed to develop policies and procedures to identify and handle pretrial detainees who have serious mental health conditions. Defendants Templeton and Preci were aware that LaSalle County Jail housed and would continue to house pretrial detainees with mental health conditions, and that the failure to develop policies and procedures to identify and handle pretrial detainees who have serious mental health conditions would result in violations of the constitutional rights of mentally ill pretrial detainees, such as Plaintiff, as protected by the Fourteenth Amendment.

55. Upon information and belief, HPL also knew that Defendant Cullinan had no formal mental health training and was not a mental health specialist, but nevertheless assigned Defendant Cullinan to provide mental health services to detainees at LaSalle County Jail, pursuant to HPL's contract with LaSalle County Jail. Further, HPL had a policy, practice and/or custom of assigning physicians who lacked training and experience to assess and treat mental illnesses to furnish mental health medical care to inmates and detainees at LaSalle County Jail, as well as other correctional facilities within the State of Illinois. This policy, practice and/or custom resulted in a violation of Plaintiff's constitutional rights as protected by the Fourteenth Amendment.

56. In the month following his receipt of Dr. Chapman's report, Defendant Cullinan did not prescribe any medication to Plaintiff, and Plaintiff's mental health conditions continued to worsen.

57. Plaintiff filed a grievance with Defendant Templeton on Sept. 9, 2008. In it, he wrote:

> The nurse recieved [*sic*] a copy of my psychiatric evaluation a month ago and the doctor has still not prescribed me the medication I should be on for 2 mental disorders. Please rectify this.

58. Defendant Templeton, despite being made aware of Defendant Cullinan's deficient care, took no action to remedy Plaintiff's situation.

59. On Sept. 16, Plaintiff filed a second grievance with Defendant Templeton, stating:

> It's been more than a month since the nurse received a copy of my psychiatric evaluation. The Dr. has still not prescribed me the medications for 2 medical disorders identified in that evaluation report.

60. Upon information and belief, Defendant Templeton requested that Defendant Cullinan see Plaintiff so that Plaintiff would stop writing grievances.

61. Defendant Cullinan agreed to see Plaintiff on Sept. 18, 2008. Defendant Cullinan took notes during his meeting with Plaintiff. He observed that Plaintiff was "anxious" and displayed a "flat affect" and "thought disorder." "Flat affect" is a medical term describing a lack of emotional reactivity. It is a well-known symptom of depression and schizophrenia. "Thought disorder" is a medical term describing unorganized and incomprehensible thinking, as manifested in a person's speech. It is a well-known symptom of several mental health disorders.

62. Given Plaintiff's mental health condition during the September 18th visit and the fact that Defendant Cullinan had received Dr. Chapman's report summarizing Plaintiff's mental

health history, Plaintiff believed that Defendant Cullinan would conduct a more thorough investigation into Plaintiff's mental health history and his current mental state in order to prescribe him the medications necessary to treat the symptoms of his mental illnesses. Upon information and belief, Defendant Cullinan did not request any additional mental health records for Plaintiff. Defendant Cullinan also did not conduct a mental health interview of Plaintiff, nor did anyone else at LaSalle County Jail.

63.     Instead, Defendant Cullinan wrote Plaintiff a 20-day prescription for Inderal (drug name: Propranolol) at a dosage level of 20 mg. According to the U.S. National Library of Medicine, Inderal is "used to treat high blood pressure, abnormal heart rhythms, heart disease, pheochromocytoma (tumor on a small gland near the kidneys), and certain types of tremor. It is also used to prevent angina (chest pain) and migraine headaches." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000727.

64.     The prescription Defendant Cullinan wrote was inadequate to treat Plaintiff's symptoms because Inderal is not typically prescribed to treat symptoms of depression and anxiety disorders, and because the dosage level and 20-day period of treatment were, in any event, wholly insufficient to make any material impact on symptoms such as those reported by Plaintiff.

65.     Defendant Cullinan knew that he lacked sufficient mental health training to provide adequate mental health care to Plaintiff, and knew that the medication and dosages he prescribed would not alleviate Plaintiff's symptoms. Nevertheless, upon information and belief, Defendant Cullinan wrote the aforementioned prescription so that Plaintiff would stop writing grievances.

66.     The prescription did not alleviate Plaintiff's symptoms, and Plaintiff's mental health continued to deteriorate.

67.     On Jan. 19, 2009, after nearly ten months in isolation, Plaintiff was examined by a clinical psychologist, Dr. Kirk Witherspoon, again in connection with his criminal trial.  Dr. Witherspoon diagnosed Plaintiff with chronic Adjustment Disorder (mixed anxiety and depressed mood) and Borderline Personality Disorder.  Dr. Witherspoon also noted that Major Depressive Disorder was an alternative diagnosis that he could not yet rule out.  Dr. Witherspoon also assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50. Upon information and belief, a GAF score of 50 is associated with serious symptoms and/or serious impairment in social functioning.

68.     Plaintiff continued to complain to correctional officers about the symptoms he was experiencing due to his deteriorating mental health as a result of the effects of his solitary confinement and the incompetent medical treatment he received from Defendant Cullinan.  Upon information and belief, Defendants Edgcomb and Darif were two of the officers to whom Plaintiff complained.  Defendants Edgcomb and Darif took no action to remedy Plaintiff's situation.

69.     Plaintiff also continued to complain to nurses and to Defendant Cullinan about his symptoms. The nurses noted that Plaintiff demonstrated a "flat effect" and a "thought disorder." Defendant Cullinan noted that Plaintiff complained of continued anxiety. However, Defendant Cullinan refused to offer any further treatment to Plaintiff for the symptoms caused by Plaintiff's depression and anxiety disorders.

70.     On Mar. 19, 2009, after nearly twelve months in isolation, Plaintiff was examined once more by Dr. Witherspoon, again in connection with his criminal case. Dr. Witherspoon

reached the same diagnostic impressions of Plaintiff that he had reached in January 2009, and recommended that Plaintiff "be afforded mental health treatment to address his emotional, interpersonal, behavioral, and cognitive limitations."

71.     Plaintiff remained in an isolation cell for more than three months following this evaluation.

72.     He was never provided any additional mental health treatment during this time.

73.     Plaintiff was transferred to Stateville Correctional Center on or about July 2, 2009 to begin serving his judicially-imposed sentence.

74.     Within hours of arriving at Stateville Correctional Center, Plaintiff was evaluated by a psychiatrist.

75.     The psychiatrist ordered that Plaintiff immediately be put onto Celexa (drug name: Citalopram), a medication used to treat symptoms of depression, and Risperdal (drug name: Risperidone), a medication used to treat symptoms of schizophrenia.

76.     In the two-plus years since his transfer from LaSalle County Jail, Plaintiff has remained on constant prescription medication to treat the symptoms of his mental health disorders.

**D.**     **Defendants Failed to Comply With Illinois County Jail Standards.**

77.     The Illinois Legislature has enacted a set of standards and procedures to be followed by all county jails in Illinois, including LaSalle County Jail.  The standards and procedures have been mandatory since October 1, 2004, and are found in Title 20, Part 701 of the Illinois Administrative Code, which the legislature has designated the "County Jail Standards."

78.     Pursuant to Section 701.40(i) of the County Jail Standards, each county jail in Illinois is required to conduct a physical and mental health assessment of new detainees.  The mental health assessment "shall include either an assessment by a mental health professional or an assessment by a jail officer using an approved screening instrument for assessing mental health."  Ill. Admin. Code tit. 20, § 701.40(i)(2).

79.     When a detainee "shows signs of or reports unusual physical or mental distress, he or she shall be referred to health care personnel as soon as possible."  *Id.* at § 701.40(i)(3). Any detainees "exhibiting psychiatric symptoms such as acute psychotic features or mood disturbances, or detainees who have a known psychiatric history shall be evaluated by a mental health professional."  *Id.* at § 701.40(i)(3)(A).

80.     Section 701.70 of the County Jail Standards establishes requirements for classifying and separating detainees, and provides that a "[r]eview of the committed person's security and assignment classification shall be conducted periodically, but at least every 60 days."  *Id.* at § 701.70(c).

81.     Section 701.90 of the County Jail Standards establishes requirements for medical and mental health care provided to detainees.  It directs that each county jail in Illinois "shall provide a competent medical authority to ensure that the following documented medical and mental health services are available:

   1)      Collection and diagnoses of complaints.

   2)      Treatment of ailments.

   3)      Prescription of medications and special diets.

   . . .

- 15 -

8) Maintenance and confidentiality of accurate medical and mental health records."

*Id.* at §§ 701.90(a)(1)-(3), (9).

82. The County Jail Standards also provide that, on an annual basis, "mental health professionals shall provide training to all jail officers and other personnel primarily assigned to correctional duties on suicide prevention and mental health issues." *Id.* at § 701.90(h). "Suicide prevention training shall include the nature and symptoms of suicide; the specifics of identification of suicidal individuals through the recognition of verbal and behavioral cues, situational stressors, evaluation of detainee coping skills, and other signs of potential risk; monitoring; evaluation; stabilization; and referral of suicidal individuals." *Id.* at § 701.90(h)(1). "Mental health training shall include the nature of mental illness; symptoms; specifics of identification of mentally ill individuals through the recognition of verbal and behavioral cues symptoms of mental illness, situational stressors, evaluation of detainee coping skills, and other signs of potential risk; monitoring; evaluation; stabilization; and referral of the mentally ill detainee." *Id.* at § 701.90(h)(2).

## COUNT I

**Violation of Fourteenth Amendment Due Process Clause – Policies Sanctioning Unconstitutional Solitary Confinement**
(against Defendants Templeton and Preci in their official capacities, and LaSalle County)

83. Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

84. As a pretrial detainee at LaSalle County Jail from Mar. 29, 2008 to July 2, 2009, Plaintiff possessed liberty interests in (1) not being punished for the crime with which he was charged, and (2) not being placed into solitary confinement for 15 consecutive months, both of

which were protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

85.     In addition, pursuant to Title 20, Section 701.70(c) of the Illinois Administrative Code, the Illinois Legislature created a statutory right for detainees at Illinois county jails to have their housing classifications reviewed at least every 60 days, which right qualifies as a liberty interest to be protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

86.     As a detainee at LaSalle County Jail from Mar. 29, 2008 to July 2, 2009, Plaintiff possessed this protected liberty interest as well.

87.     Defendants Templeton and Preci, in their official capacities as LaSalle County Sheriff/Chief Jailer and Jail Superintendent, respectively, were responsible for establishing the formal and informal procedures and policies to be followed at LaSalle County Jail. The official policies, practices and/or widespread customs of Defendant LaSalle County, as established and/or condoned by Defendants Templeton and Preci, and/or the deliberate acts of Defendants Templeton and Preci, were the direct cause of, or the moving force behind, Plaintiff being deprived of the aforementioned protected liberty interests. The deprivation of Plaintiff's rights occurred by Plaintiff (1) being kept in an isolation cell for more than 15 consecutive months, (2) never having this housing classification reviewed or its impact on him assessed, and (3) never being provided with notice or an opportunity to be heard.

88.     Defendants Templeton and Preci were aware, because of the well-publicized studies on the damaging effects of solitary confinement as well as the requirements of the Illinois County Jail Standards, of the need for appropriate policies and procedures to review pretrial detainees' housing conditions at least every 60 days. Defendants Templeton and Preci were also

aware of the need to assess the impact of solitary confinement on pretrial detainees. Nevertheless, despite knowledge of these needs, Defendants Templeton and Preci, acting with deliberate indifference, failed to develop and implement adequate policies and procedures with the foreseeable result that pretrial detainees, like Plaintiff, would suffer irreparable harm from extended solitary confinement. Moreover, Defendants Templeton and Preci also condoned the following widespread practices: (1) arbitrarily placing detainees into solitary confinement; (2) not providing notice and an opportunity to be heard before, during, or after placing detainees into solitary confinement; and (3) punishing pretrial detainees for the crimes with which they are charged.

89.     Due to the failure to develop and implement adequate policies and procedures relating to monitoring and addressing the effects of solitary confinement, the jail staff failed or refused to take action to monitor or address the effects of solitary confinement on Plaintiff, which failures were a proximate cause of Plaintiff suffering serious physical, mental and emotional harm.

90.     Likewise, the policies and widespread practices described above were also a proximate cause of Plaintiff suffering severe physical, mental and emotional harm.

### COUNT II

**Violation of Fourteenth Amendment Due Process Clause – Excessive Solitary Confinement**
(against Defendants Templeton, Preci, Edgcomb, Darif, and Rick in their individual capacities)

91.     Plaintiff incorporates by reference paragraphs 1-90 above as though fully set forth herein.

92.     As set forth in Count I above, at all times relevant to this Amended Complaint, Plaintiff possessed protected liberty interests in (1) not being punished for the crime with which he was charged, and (2) not being placed into solitary confinement for 15 consecutive months.

93.     In addition, Plaintiff possessed a protected liberty interest in having his housing classification reviewed at least every 60 days, which interest arises under the mandatory County Jail Standards set forth in Title 20, Section 701.70(c) of the Illinois Administrative Code.

94.     Defendants Templeton, Preci, Edgcomb, Darif, and Rick, each acting under color of state law in their respective positions as employees of LaSalle County, deprived Plaintiff of these protected liberty interests by keeping him in an isolation cell for more than 15 consecutive months, never reviewing this housing classification or assessing its impact on Plaintiff, and never providing Plaintiff with notice or an opportunity to be heard.

95.     Defendants' actions in keeping Plaintiff in solitary confinement for more than 15 consecutive months were not reasonably related to any legitimate governmental purpose.

96.     Upon information and belief, Defendant Templeton, in his position as the Chief Jailer at LaSalle County Jail, participated in the above deprivation of Plaintiff's rights because he (1) acted or failed to act with a deliberate or reckless disregard of Plaintiff's rights; (2) directed that Plaintiff be kept indefinitely in an isolation cell; and (3) knew about, participated in and consented to the decision to keep Plaintiff in an isolation cell for more than 15 consecutive months.

97.     Upon information and belief, Defendant Preci, in his position as the Jail Superintendent at LaSalle County Jail, participated in the above deprivation of Plaintiff's rights because he (1) acted or failed to act with a deliberate or reckless disregard of Plaintiff's rights; (2) directed that Plaintiff be kept indefinitely in an isolation cell; and (3) knew about, participated in and consented to the decision to keep Plaintiff in an isolation cell for more than 15 consecutive months.

98.     Upon information and belief, Defendant Edgcomb, in her position as a Corporal and senior supervisor at LaSalle County Jail, participated in the above deprivation of Plaintiff's rights because she (1) acted or failed to act with a deliberate or reckless disregard of Plaintiff's rights; (2) directed that Plaintiff be kept indefinitely in an isolation cell; and (3) knew about, participated in and consented to the decision to keep Plaintiff in an isolation cell for more than 15 consecutive months.

99.     Upon information and belief, Defendant Darif, in her position as a Corporal and supervisor at LaSalle County Jail, participated in the above deprivation of Plaintiff's rights by acting or failing to act with a deliberate or reckless disregard of Plaintiff's rights.

100.     Upon information and belief, Defendant Rick, in his position as a Deputy and correctional officer at LaSalle County Jail, participated in the above deprivation of Plaintiff's rights by acting or failing to act with a deliberate or reckless disregard of Plaintiff's rights.

101.     These Defendants' deprivation of Plaintiff's rights under the Fourteenth Amendment caused Plaintiff to suffer serious physical, mental and emotional harm.

## COUNT III

**Violation of Fourteenth Amendment Due Process Clause – Deliberate Indifference to Serious Medical Needs**
(against Defendants Templeton, HPL, Cullinan, Edgcomb and Darif in their individual capacities)

102.     Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

103.     As a pretrial detainee at LaSalle County Jail from Mar. 29, 2008 to July 2, 2009, Plaintiff possessed a liberty interest obtaining medical care for his serious medical needs, which interest was protected by the Due Process Clause of the Fourteenth Amendment.

104.     Defendants Templeton, Edgcomb, and Darif, each acting under color of state law in their respective positions as employees of LaSalle County, and Defendants HPL and Cullinan,

acting under color of state law pursuant to HPL's contract with LaSalle County to provide health care services to detainees at LaSalle County Jail, deprived Plaintiff of his protected liberty interest by acting with deliberate indifference to Plaintiff's serious medical needs.

105.     Plaintiff had serious medical needs due to the fact that he required continuous prescription medication, not only to control the symptoms of his two diagnosed mental illnesses – depression and anxiety disorder – but also to control the symptoms of the undiagnosed mental health disorders brought about by the conditions of his confinement, including schizoaffective disorder and brief psychotic disorder.

106.     Upon information and belief, Defendant Templeton was aware of Plaintiff's serious medical needs based on his communications with Defendant Cullinan in or about September 2008 regarding Plaintiff's grievances sent that same month, which grievances addressed Defendant Cullinan's failure to provide competent medical care for Plaintiff's mental illnesses. Defendant Templeton knew that Defendant Cullinan lacked the necessary training and experience to provide competent medical care for Plaintiff's mental illnesses.  However, in deliberate indifference to Plaintiff's serious medical needs, Defendant Templeton failed or refused to take action to provide Plaintiff with necessary medical and psychiatric care, thereby depriving Plaintiff of his rights under the Fourteenth Amendment and causing the physical, mental and emotional harm to Plaintiff as set forth in Count I.

107.     Upon information and belief, Defendant Cullinan was aware of Plaintiff's serious medical needs on or about Aug. 6, 2008 based on his discussions with Plaintiff and his receipt of Dr. Chapman's psychiatric evaluation of Plaintiff.  Defendant Cullinan knew that he lacked the necessary training and experience to provide competent medical care for Plaintiff's mental illnesses.  However, in deliberate indifference to Plaintiff's serious medical needs, Defendant

Cullinan failed or refused to take action, in the course of his employment with Defendant HPL, to provide Plaintiff with necessary medical and psychiatric care, thereby depriving Plaintiff of his rights under the Fourteenth Amendment and causing the physical, mental and emotional harm to Plaintiff as set forth in Count I.

108.     Defendants Edgcomb and Darif were aware of Plaintiff's medical illnesses based on Plaintiff's oral complaints to them about his disorders and his need for medication. Defendants Edgcomb and Darif knew that Defendant Cullinan lacked the necessary training and experience to provide competent medical care for Plaintiff's mental illnesses.   However, in deliberate indifference to Plaintiff's serious medical needs, Defendants Edgcomb and Darif failed or refused to take action to provide Plaintiff with necessary medical and psychiatric care, thereby depriving Plaintiff of his rights under the Fourteenth Amendment and causing the physical, mental and emotional harm to Plaintiff as set forth in Count I.

## COUNT IV

**Violation of Fourteenth Amendment Due Process Clause – Policies Sanctioning Deliberate Indifference to Serious Medical Needs**
(against Defendants Templeton and Preci in their official capacities, and LaSalle County)

109.     Plaintiff incorporates by reference paragraphs 1-82 and 103-108 above as though fully set forth herein.

110.     As set forth in Count III, Defendants Templeton, Cullinan, Edgcomb, and Darif deprived Plaintiff, a pretrial detainee at LaSalle County Jail, of protected liberty interests in violation of the Due Process Clause of the Fourteenth Amendment by acting with deliberate indifference to Plaintiff's serious medical needs.

111.    Defendants Templeton and Preci, in their official capacities as LaSalle County Sheriff/Chief Jailer and Jail Superintendent, respectively, were responsible for establishing the formal and informal procedures and policies to be followed at LaSalle County Jail.

112.    The official policies, practices and/or widespread customs of Defendant LaSalle County, as established and/or condoned by Defendants Templeton and Preci, and/or the deliberate acts of Defendant Templeton, were the direct cause of, or the moving force behind, the constitutional injuries set forth in Count III.  Defendants Templeton and Preci condoned the practice of contracting only with Defendant HPL to treat all of the medical and mental health care needs of detainees at LaSalle County Jail, even though they knew that Defendant Cullinan had no formal mental health training or experience and thus could not provide competent medical care for pretrial detainees with mental illnesses.  Further, Defendants Templeton and Preci also condoned the practice of not requiring correctional officers to undergo mental health training, which practice contributed to Defendants Edgcomb and Darif not taking appropriate action despite knowledge of the harm that could result from failing to treat Plaintiff's serious medical needs.

113.    These policies, practices and customs were implemented with deliberate indifference to the serious medical needs of pretrial detainees, like Plaintiff, who suffered from mental illnesses.  As a result of these policies, practices and customs, Plaintiff suffered the physical, mental and emotional harm as set forth in Count I.

## COUNT V

**Violation of Fourteenth Amendment Due Process Clause – Failure to Comply With Mandatory Mental Health Procedures**
(against Defendants Templeton and Preci, in their individual/official capacities, and LaSalle County)

114.    Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

115.    The Illinois Legislature created several statutory rights for county jail detainees under Title 20, Part 701 of the Illinois Administrative Code, each of which qualifies as a liberty interest to be protected by the Due Process Clause of the Fourteenth Amendment.  The statutory requirements set forth in Part 701 were mandatory for Illinois county jails as of October 1, 2004.

116.    Under Section 701.40(i), the legislature created a statutory right for new detainees to receive a mental health assessment during their admission to a county jail, done either by a mental health professional or by a correctional officer using an approved mental health screening instrument.  Plaintiff possessed this protected liberty interest during his booking procedure at LaSalle County Jail on or about Mar. 29, 2008.

117.    Defendants Templeton and Preci, in their individual and official capacities as LaSalle County Sheriff/Chief Jailer and Jail Superintendent, respectively, were responsible for establishing the formal and informal procedures and policies to be followed at LaSalle County Jail.  Upon information and belief, Defendants Templeton and Preci, each acting under color of state law and in their individual and official capacities, deprived Plaintiff of this protected liberty interest by condoning a practice under which mental health professionals did not assist in the admission process and correctional officers did not conduct a mental health assessment of new detainees.

118.     Under Sections 701.40(i)(3)-(3)(A), the legislature created a statutory right for detainees to be referred to a mental health professional for evaluation as soon as possible if they show or report symptoms of a mental health disorder, or if they have a known history of mental health disorder.  Similarly, under Section 701.90(a), the legislature created a statutory right for detainees to have access to competent mental health professionals who, among other things, diagnose complaints, treat ailments, prescribe medications, and maintain accurate mental health records.  Plaintiff possessed these protected liberty interests upon his admission to LaSalle County Jail on or about Mar. 29, 2008.

119.     Defendants Templeton and Preci, each acting under color of state law and in their individual and official capacities, deprived Plaintiff of these protected liberty interests by condoning practices under which (1) LaSalle County Jail contracted only with Defendant Cullinan to provide mental health care to detainees even though Defendants Templeton and Preci knew that Defendant Cullinan had no formal mental health training or experience and thus could not provide competent medical care for pretrial detainees with mental illnesses; (2) detainees were denied access to Defendant Cullinan for mental health problems except in the most extreme cases; and (3) Defendant Cullinan would not need to request or review detainees' mental health records except in the most extreme cases.

120.     Finally, the legislature created a right under Section 701.90(h) for detainees to be supervised by corrections officers who have received annual training from mental health professionals on suicide prevention and mental health issues.  Plaintiff possessed this protected liberty interest upon his admission to LaSalle County Jail on or about Mar. 29, 2008.

121.     Defendants Templeton and Preci, each acting under color of state law and in their individual and official capacities, deprived Plaintiff of this protected liberty interest by condoning the practice of not requiring correctional officers to undergo mental health training.

122.     As a result of the aforementioned actions and practices, Plaintiff was denied the necessary treatment for his mental illnesses for more than 15 months, which caused Plaintiff to suffer serious physical, mental and emotional harm.

### COUNT VI

**Violation of Fourteenth Amendment Due Process Clause – Failure to Train and Supervise**
(against Defendants Templeton and Preci, in their individual/official capacities, and LaSalle County)

123.     Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

124.     Defendants Templeton and Preci were aware of the need for appropriate policies and procedures to monitor and discipline LaSalle County Jail employees to prevent illegal and unconstitutional behaviors by these employees against pretrial detainees of the LaSalle County Jail.   Nevertheless, they failed to develop and implement adequate policies and procedures, including by failing to follow the mandatory county jail standards enacted by the Illinois Legislature, which enabled LaSalle County Jail employees to engage in conduct that violates the constitutional rights of persons in custody with mental illness and housed in solitary confinement, including Plaintiff, without fear of reprimand, discipline or criminal prosecution, creating an atmosphere where such unconstitutional behavior is ratified, tolerated, acquiesced or condoned in reckless disregard and deliberate indifference to the constitutional rights of Plaintiff.

125.     As a result of the aforementioned actions and practices, Plaintiff was denied the necessary treatment for his mental illnesses for more than 15 months, which caused Plaintiff to suffer serious physical, mental and emotional harm.

## COUNT VII

**Violation of Americans With Disabilities Act and Section 504 of the Rehabilitation Act – Denial of Services to Mentally Ill Detainees**
(against Defendants Templeton and Preci in their official capacities, LaSalle County, and HPL)

126.    Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

127.    Defendant LaSalle County is a local government entity which engages in offering and providing medical services to members of the general public who are in the custody of the LaSalle County Jail, which is operated by Defendant LaSalle County.  LaSalle County receives federal funds and is a public entity as defined under Title II of the ADA.

128.    Defendant HPL is a private entity which engages in offering and providing medical services to members of the general public who are in the custody of the LaSalle County Jail, pursuant to a contract for services with LaSalle County, a recipient of federal funds.

129.    Section 504 requires the recipients of federal funds to reasonably accommodate persons with disabilities in their facilities, program activities and services.  It further requires such recipients to modify such facilities, services and programs as necessary to accomplish this purpose.  LaSalle County and LaSalle County Jail are recipients of federal funds and are subject to the mandate of Section 504.

130.    The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled.  Such services include, *inter alia*, provisions necessary to achieve medical care for mental illness.

131.    At all times during his incarceration as a pretrial detainee, Plaintiff suffered from several severe mental health impairments, including schizophrenia, schizoaffective disorder, brief psychotic disorder, depression, anxiety disorder, panic disorder, borderline personality

disorder, anti-social personality disorder, and chronic PTSD. Plaintiff is a qualified individual with a disability pursuant to Section 504 and the ADA.

132.    Defendants LaSalle County and HPL are entities which must comply with Section 504 and the ADA.

133.    Defendants Templeton, Preci, Edgcomb, Darif, and Cullinan are individuals who are employed by, associated with or otherwise acting as authorized representatives or agents of Defendants LaSalle County and/or HPL at the LaSalle County Jail.

134.    At all times relevant to this Amended Complaint, Defendants, and each of them, were the agents, representatives, principals and/or employees of each other and, in committing the acts alleged herein, were acting within the course and scope of said agency or employment.

135.    At all times relevant to this Amended Complaint, Defendants LaSalle County and HPL discriminated against mentally disabled persons, including Plaintiff, by providing adequate health care to non-mentally disabled detainees at LaSalle County Jail, but denying adequate health care to mentally disabled persons. In particular, Defendants Templeton and Preci, in their official capacities, contracted only with Defendant Cullinan to provide medical and mental health care to detainees even though they knew that Defendant Cullinan lacked the mental health training and experience necessary to provide competent medical care for pretrial detainees with mental illnesses and, thus, that he could not provide competent health care to mentally disabled detainees. Likewise, Defendant HPL assigned Defendant Cullinan to provide medical and mental health care to pretrial detainees at LaSalle County Jail even though it knew that Defendant Cullinan lacked the mental health training and experience necessary to provide competent medical care for pretrial detainees with mental illnesses and, thus, that he could not provide competent health care to mentally disabled detainees. Thus, non-mentally disabled

detainees at LaSalle County Jail could obtain competent health care from LaSalle County Jail, while mentally disabled detainees, like Plaintiff, could not obtain competent medical care for any mental illnesses.

136. Instead of accommodating Plaintiff's needs, Defendants LaSalle County and HPL denied him adequate medical and mental health services and programs available to others that would have prevented his physical and mental injuries. This failure to accommodate Plaintiff's disabilities was intentional and/or deliberately indifferent to Plaintiff's rights under Section 504 and Title II of the ADA and was the proximate cause of his injuries.

## COUNT VIII

### Intentional Infliction of Emotional Distress
(against Defendants Templeton, HPL, and Cullinan in their individual capacities)

137. Plaintiff incorporates by reference paragraphs 1-82 above as though fully set forth herein.

138. As set forth above, Defendants Templeton's and Cullinan's conduct toward Plaintiff was extreme and outrageous.

139. Defendant Templeton directed that Plaintiff be kept in isolation cells at LaSalle County Jail for more than 15 consecutive months despite knowledge that (1) such confinement causes severe psychological problems and emotional distress in even the most healthy of detainees; and (2) Plaintiff had been diagnosed with at least two mental health disorders and was not receiving competent mental health care for those disorders.

140. Defendant Cullinan, acting in the course of his employment with Defendant HPL, denied competent mental health treatment to Plaintiff despite knowledge that (1) Plaintiff had been diagnosed with at least two mental health disorders requiring constant medication; and (2) Plaintiff was being housed in isolation cells at LaSalle County Jail, which cells would

- 29 -

necessarily increase the severity of the symptoms and the emotional distress associated with Plaintiff's mental health disorders.

141.     Defendants Templeton and Cullinan (and thus, Defendant HPL) intended to cause, or recklessly or consciously disregarded the probability of causing, Plaintiff to suffer severe emotional distress.

142.     During the 15-plus months he spent at LaSalle County Jail, Plaintiff suffered severe psychological problems and emotional distress.

143.     These Defendants' conduct was an actual and proximate cause of Plaintiff's emotional distress.

## Count IX

### Tort Immunity Act
(against Defendant LaSalle County)

149.     Defendant LaSalle County is the local government entity responsible for funding the LaSalle County Jail.

150.     Pursuant to § 9-102 of the Illinois Tort Immunity Act, LaSalle County must pay any tort judgment or settlement for compensatory damages for which it or an employee acting within the scope of his/her employment is liable.

151.     Defendant LaSalle County employs Defendants Templeton, Preci, Edgcomb, Darif, and Rick.  These Defendants committed all acts alleged within this Amended Complaint within the course and scope of their employment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)     Exercise its power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and declare that:

1.     Defendants violated the Civil Rights Act of 1871 (42 U.S.C. § 1983) by violating Plaintiff's Due Process rights guaranteed by the Fourteenth Amendment to the United States; and

2.     Defendants violated Section 504 of the Rehabilitation Act (29 U.S.C. §794) and Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131-65) by denying Plaintiff the benefits of health care services provided to non-mentally disabled detainees at LaSalle County Jail.

(b)     Award Plaintiff compensatory damages for the injuries he suffered that were caused by Defendants.

(c)     Award Plaintiff punitive damages to punish Defendants for their reprehensible conduct and to deter Defendants and other similarly situated persons and entities from engaging in similar conduct in the future.

(d)     Award Plaintiff a reasonable attorney's fee as provided by 42 U.S.C. § 1988(b).

(e)     Award Plaintiff a reasonable attorney's fee as provided by 29 U.S.C. § 794a(b).

(f)     Award Plaintiff a reasonable attorney's fee as provided by 42 U.S.C. § 12205.

(g)     Award costs to Plaintiff.

(h)     Grant such additional relief as it deems just and proper.

## JURY DEMAND

Plaintiff seeks trial by jury of all issues so triable.

Dated:  March 16, 2012

Respectfully submitted,

SCHIFF HARDIN LLP

    /s/ William M. Hannay
William M. Hannay
Sara L. Ellis
Jacob L. Kahn
233 S. Wacker Dr., Suite 6600
Chicago, Illinois 60606
Phone: (312) 258-5500
Fax:    (312) 258-5600
Email:  whannay@schiffhardin.com
        sellis@schiffhardin.com
        jkahn@schiffhardin.com

*Appointed Counsel for Plaintiff Justin Ray Sparlin*